## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 43911

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 743 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 21, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DENISE FRANCES NESBITT, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K. C. Meyer, District Judge.

Order granting restitution, affirmed.

Eric D. Fredericksen, Interim State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Denise Frances Nesbitt appeals from the district court's order granting restitution. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Gloria Buck hired Nesbitt to help Buck take care of her disabled daughter, Holly. Buck noticed several items of jewelry were missing from her bedroom after she hired Nesbitt. Buck reported the missing items of jewelry to the police and filed a claim with her insurance carrier. The police located pawn shop records indicating that Nesbitt had pawned several items of jewelry matching the description of the items Buck had reported missing. Nesbitt said Holly had asked Nesbitt to pawn those items of jewelry. Holly denied asking Nesbitt to pawn any items of jewelry. Buck's insurance had a policy limit of $5,000 and a $2,500 deductible. After Buck met the $2,500 deductible, her insurance carrier paid her $2,597.28 for the missing jewelry.

1

The State charged Nesbitt with grand theft, alleging that between January 1, 2014, and July 31, 2014, Nesbitt wrongfully took "jewelry, of a value in excess of one thousand dollars ($1,000.00)." In exchange for Nesbitt's *Alford*[1] plea to the grand theft charge and promise to pay restitution, the State agreed not to file additional charges and would recommend a withheld judgment. At arraignment, Nesbitt agreed to pay restitution and entered her *Alford* plea, indicating that she believed "there would be enough evidence that a jury would be able to find her guilty in this case." Nesbitt did not specify that she was only agreeing to pay restitution for certain items of jewelry or that her plea was based on evidence that she stole any particular items of jewelry.

The State requested that Nesbitt pay $2,597 to Buck's insurance carrier and $8,718 to Buck in restitution for all missing items of jewelry, and Nesbitt objected. At sentencing, Nesbitt requested a restitution hearing, arguing that she should only have to pay restitution for items the State could show she pawned. The district court sentenced Nesbitt to a unified term of five years with two years determinate but suspended her sentence in favor of three years of probation. The court scheduled a restitution hearing and retained jurisdiction to determine the amount of Nesbitt's restitution.

At the restitution hearing, Buck testified regarding the purchase price and description of the missing items of jewelry. The State introduced pawn shop records as exhibits supporting its restitution claim. Buck confirmed that the description in some of the pawn shop records matched the description of some of her missing items of jewelry. Nesbitt argued the State had not established the market value of the missing items of jewelry, and the State's exhibits did not adequately link her to some of the missing items of jewelry. Nesbitt again argued that she should only have to pay restitution for items the State could show she pawned.

In a written decision, the district court ordered Nesbitt to pay $2,597.28 to Buck's insurance carrier and $5,150.52 to Buck in restitution for all of her items of missing jewelry. Nesbitt timely appeals.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

## II.

## ANALYSIS

Nesbitt argues the items of jewelry in the district court's restitution award were not within the scope of the offense to which she pled guilty or agreed to pay restitution. She also argues the district court abused its discretion in determining the amount of restitution.

### A.      Scope of the Restitution Award

Nesbitt argues items of jewelry in the district court's restitution award were not within the scope of the offense to which she pled guilty. According to Nesbitt, the information did not specifically identify all the items of jewelry she allegedly stole from Buck, and she only admitted to taking a few items of Buck's jewelry. Thus, Nesbitt argues she cannot be ordered to pay restitution for items of jewelry she was not specifically charged with stealing and did not admit to taking. Further, Nesbitt argues she cannot be ordered to pay restitution for items not specifically identified in the information because those items were not adjudicated or before the court, and she never agreed to pay for those items.

Idaho Code § 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Restitution, however, may be ordered only for actual economic loss suffered by a victim, unless the parties consent to a broader restitution order. I.C. § 19-5304(1)(a), (2), (9). The term "'[e]conomic loss' includes, but is not limited to, the value of property taken, destroyed, broken, or otherwise harmed . . . resulting from the criminal conduct . . . ." I.C. § 19-5304(1)(a). Victims include persons who suffer "economic loss or injury as the result of the defendant's criminal conduct . . . ." I.C. § 19-5304(1)(e)(i). "Thus, there must be a causal connection between the conduct for which the defendant is convicted and the damages the victim suffers." *State v. Schultz*, 148 Idaho 884, 886, 231 P.3d 529, 531 (Ct. App. 2008).

In *Schultz*, the State charged the defendant with "grand theft by exercising unauthorized control and/or making unauthorized transfers [on the victim's] credit card accounts and/or bank accounts in an amount exceeding $1,000 between October 2003, and May 2004." *Id.* At trial,

3

the State presented evidence showing the defendant made unauthorized transactions on the victim's bank card. *Id.* at 885, 231 P.3d at 530. The jury found the defendant guilty. *Id.* At the restitution hearing, "the state sought, and was awarded, restitution for additional unauthorized individual transactions." *Id.* On appeal, the defendant argued the additional unauthorized transactions were not within the scope of the crime for which she was convicted. *Id.* at 885-86, 231 P.3d at 530-31. This Court affirmed the restitution award, holding the additional unauthorized transactions were within the scope of the crime for which the defendant was convicted because the transactions fit within the same time frame and criminal theory charged in the information and the information did not charge the defendant with theft of a specific amount of money. *Id.* at 886-87, 231 P.3d at 531-32.

In this case, the State charged Nesbitt with grand theft by wrongfully taking "jewelry, of a value in excess of one thousand dollars ($1,000.00)" between January 1, 2014, and July 31, 2014. Like the information in *Schultz* that did not charge the defendant with theft of a specific amount of money, the information here did not charge Nesbitt with theft of a specific amount of jewelry. Further, similar to the additional unauthorized transactions in *Schultz*, the additional missing items of jewelry here fit within the same time frame and criminal theory charged in the information. Thus, the additional missing items of jewelry here were within the scope of the crime for which Nesbitt was convicted and the district court properly awarded restitution for them.[2]

---

[2]    In *Schultz*, this Court noted that the defendant had made "no challenge to the sufficiency of the state's proof at the restitution hearing." *State v. Schultz*, 148 Idaho 884, 887, 231 P.3d 529, 532 (Ct. App. 2008). Thus, Nesbitt asserts *Schultz* is inapposite because she "has always denied that she took any items of jewelry from Ms. Buck beyond those" she admitted to taking and the State never proved she took any additional items from Buck.

Nesbitt's challenge to the sufficiency of the State's proof does not mean there was not sufficient evidence that she took the additional items from Buck. Nesbitt pled guilty to grand theft. By its plain terms, the information that charged her with grand theft was broad enough to include all of Buck's missing items of jewelry. Moreover, Holly and Gloria Buck denied Nesbitt's version of the events and Gloria Buck credibly testified about all of the missing items of jewelry and Nesbitt's connection to their disappearance. Finally, pawn shop records tied Nesbitt to several of the most expensive items of missing jewelry. Thus, we cannot say there was insufficient evidence of a causal connection between Nesbitt and the additional missing items of jewelry.

4

If Nesbitt wanted to limit the scope of her crime or the items for which she would pay restitution, it was incumbent for her to do so in her plea agreement or at arraignment.[3] When a plea is offered pursuant to a plea agreement, "the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered." Idaho Criminal Rule 11(f)(2). This disclosure is necessary for the trial judge to properly administer the plea agreement. *State v. Hurles*, 158 Idaho 569, 573, 349 P.3d 423, 427 (2015). Because appellate courts can know only what is revealed on the record, it is incumbent upon the respective attorneys to clearly and unambiguously state the entire plea agreement on the record. *Id.* Plea agreements are contractual in nature and are generally examined by courts in accordance with contract law standards. *State v. Nienburg*, 153 Idaho 491, 496, 283 P.3d 808, 813 (Ct. App. 2012). As with other contracts, provisions of plea agreements are occasionally ambiguous. *Id.* Whether a plea agreement is ambiguous is a question of law over which we exercise free review. *Id.*

In this case, the information to which Nesbitt pled guilty charged her with wrongfully taking "jewelry, of a value in excess of one thousand dollars ($1,000.00)." As worded, the information unambiguously referred to items of Buck's missing jewelry with an aggregate value of more than $1,000. Nothing in the plea agreement[4] or at arraignment[5] limited Nesbitt's crime or restitution obligation to only those items of jewelry she admitted to taking. In the absence of evidence showing such a limitation in the plea agreement or at arraignment, we hold the district court's restitution award for claimed items of Buck's missing jewelry was appropriate.

---

[3] While Nesbitt's *Alford* plea allowed her to plead guilty to grand theft without actually admitting guilt, it did not limit the scope of her crime. If Nesbitt wanted to limit the scope of her crime, she needed to do so specifically in her plea agreement or at arraignment.

[4] The only term of the plea agreement regarding restitution reads: "Pay restitution."

[5] Nesbitt's attorney did clarify the factual basis for the grand theft charge at arraignment, stating: "[B]etween January to October of 2014, there's allegations by an individual named Gloria Buck that while my client was a caregiver in her house that my client wrongfully removed jewelry from the house, including rings, necklace, and I believe a bracelet from the residence." Although this statement lists some of the items of jewelry Buck accused Nesbitt of taking, it does not limit Nesbitt's crime or restitution obligation to only those items of jewelry she admitted to taking.

**B.      Abuse of Discretion**

Nesbitt argues the district court abused its discretion in determining the amount of the restitution award.  We will not overturn an order of restitution unless an abuse of discretion is shown.  *Richmond*, 137 Idaho at 37, 43 P.3d at 796.  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason.  *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).  To meet the second and third requirements of this analysis, the trial court must base the amount of restitution upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator.  I.C. § 19-5304(6); *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010).

The determination of the amount of restitution is a question of fact for the trial court.  *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011); *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997).  The district court's factual findings with regard to restitution will not be disturbed on appeal if supported by substantial evidence.  *Corbus*, 150 Idaho at 602, 249 P.3d at 401; *Lombard*, 149 Idaho at 822, 242 P.3d at 192.  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013).

Specifically, Nesbitt argues the district court abused its discretion in determining the amount of restitution because the State did not prove the market value or replacement cost of the missing items of jewelry by a preponderance of the evidence.[6]  At the restitution hearing, Buck testified regarding the purchase price of the missing items of jewelry.  The State did not introduce evidence of the market value or replacement cost of the items.  Thus, Nesbitt asserts the court abused its discretion in determining the amount of restitution without sufficient evidence of the market value or replacement cost of the missing items of jewelry.

After reducing the amount of its award for some items of jewelry, based on their altered condition and depreciation, the district court noted that several of the items had likely

---

[6]      In the context of restitution, "value means the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime."  Idaho Code § 18-2402(11)(a).

6

appreciated in value since their purchase. However, the court refused to increase the amount of its award for those items absent evidence of their appreciation. The court then stated:

> There is no competent evidence to support an award that would represent current market value, but the Court determines that the purchase price of the fine jewelry is sufficient to meet the State's burden of proving value by a preponderance of the evidence. It is notable that the jewelry is more than twenty to more than forty years old, and that while [Nesbitt] was quite insistent that only the current market value as established by an expert would satisfy the State's burden of proof, [Nesbitt] cannot argue that an award based on the much lower purchase price of the fine jewelry would prejudice [her].
>
> Based on the credibility of [Buck] and the foregoing considerations, the Court determines that [$7,747.80 is] a fair representation of the market value to the victim of the property stolen by [Nesbitt].

We hold that substantial evidence supported the district court's determination of the amount of restitution. Despite the likely appreciation of several of Buck's missing items of jewelry, the court awarded restitution based on the decades-older purchase price of the jewelry and reduced the amount of its award for some items of jewelry. The court based its award on the evidence presented, recognized the lacking evidence of market value and replacement cost, and adjusted its award in favor of Nesbitt. Nesbitt does not dispute that several items of Buck's missing jewelry had likely appreciated in value and cannot show she was prejudiced by the court's decision.[7] Accordingly, we cannot say the district court abused its discretion in determining the amount of restitution.

---

[7]   For the first time in her reply brief, Nesbitt argues there was no evidence presented at the restitution hearing to support the district court's valuation of one piece of jewelry: a gold feather pin. Nesbitt did not make this argument in her opening brief. Rather, she primarily argued that the district court's valuation methodology was an abuse of discretion. A reviewing court looks to the initial brief on appeal for the issues presented on appeal. *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). Consequently, "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). However, having reviewed the evidence in the record, including the exhibits presented at the restitution hearing, we conclude there was sufficient evidence to support the district court's valuation of the gold feather pin.

## III.

## CONCLUSION

All items of jewelry in the district court's restitution award were within the scope of the offense to which Nesbitt pled guilty and the court did not abuse its discretion in determining the amount of her restitution. Accordingly, the district court's order granting restitution is affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.